# FILED

06/21/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0564

DA 15-0564

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 153

CITY OF MISSOULA,

        Plaintiff and Appellee,

    v.

BRIEANA MARIE TYE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-15-152
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Brett D. Schandelson, Sarah M. Lockwood, Tipp & Buley, P.C., Missoula, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant Attorney General, Helena, Montana

            Andrew F. Scott, Chief Prosecuting Attorney, Missoula, Montana

Submitted on Briefs:  May 18, 2016

Decided:  June 21, 2016

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1    Brieana Tye appeals an opinion and order of the Fourth Judicial District Court, Missoula County, affirming the Missoula Municipal Court's denial of Tye's motion to suppress all evidence obtained from Missoula Police Department Officer J.P. Jones' contact with her that culminated in her arrest for Aggravated Driving Under the Influence (DUI). We address the following issue:

> *Whether the District Court erred in affirming the Municipal Court's order denying Tye's motion to suppress.*

¶2    We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    At 1:37 a.m. on May 22, 2014, Rami Haddad reported a drunk driver to 911 in Missoula, Montana. Haddad told the 911 dispatcher that he was driving on Hillview Way toward downtown Missoula when a black Acura 2.0 CL with gold badging pulled out in front of him. Haddad reported that the driver unsuccessfully tried to rev her engine and was swerving. He told the dispatcher that he could not provide a physical description of the driver due to the vehicle's tinted windows or see the vehicle's license plate. Haddad stated that he would "possibly" be willing to sign a complaint if the vehicle was located. He provided his first and last name and phone number, but declined to provide his home address. At the end of the conversation, Haddad indicated he was willing to be contacted by law enforcement, stating: "No problem calling me."

¶4    Missoula Police Department Officers Jones and Todd Horton responded to the 911 report. While driving on Hillview Way, Officer Horton passed a vehicle that fit the

2

description given by Haddad. Officer Horton encountered Officer Jones on Hillview Way and pointed out the vehicle. Officer Jones observed it turn eastbound onto 34th Street. He searched the area and found a black Acura 2.0 CL parked in an apartment complex parking lot at 3735 Stephens Avenue. Tye was standing near the vehicle. Officer Jones approached her on foot and conversed with her.[1] Based on his observations that she was swaying, had watery eyes and slow, slurred speech, and smelled of alcohol, Officer Jones determined Tye was intoxicated. Tye admitted she had several drinks before driving down Hillview Way, and Officer Jones arrested her for DUI.

¶5      After arresting Tye, Officer Jones discovered that Haddad lied about his location when he called 911. Haddad informed Officer Jones that he did not observe Tye drive down Hillview Way, but rather called 911 from his residence at 116 Erika Court after Tye drove away from that location intoxicated. Haddad stated that he fabricated the information he provided to 911 because he and Tye were friends, and he did not want her to know he was the complainant.

¶6      Tye appeared in Missoula Municipal Court and pled not guilty to a DUI charge. She then moved to suppress all evidence obtained from Officer Jones' contact with her, contending that Haddad's 911 report did not give Officer Jones particularized suspicion to initiate an investigative stop. The Municipal Court held an evidentiary hearing on Tye's motion. During the hearing, the City of Missoula called as a witness Chris

---

[1] Although the City of Missoula (City) contends it argued below that Officer Jones did not seize Tye when he approached her, the City does not make this argument on appeal, stating: "Since the City chose not to call witnesses to support its argument that Officer Jones did not seize Tye, and there was no stipulation of facts regarding this issue, there is no record upon which the City can now argue this issue on appeal."

Lounsbury, Director of the Office of Emergency Management for the City and County of Missoula, who oversees Missoula's 911 dispatch center. Lounsbury explained that federal law requires cell phone service providers to collect and provide GPS data to 911 dispatch centers when 911 calls are placed from cell phones. This information is displayed as a set of coordinates, which do not provide a recognizable address. The 911 dispatch center in Missoula has a computer system through which dispatchers can plot the coordinates to retrieve an approximate physical address. Lounsbury explained that this system is only accurate 90% of the time, and the approximate location provided is as large as a football field. Therefore, Lounsbury explained, 911 dispatchers do not regularly use the system and instead rely on the information callers provide because it is more accurate.

¶7 After the hearing, the Municipal Court issued an order denying Tye's motion to suppress. The Municipal Court concluded that Officer Jones reasonably relied on the information Haddad provided, even though he later learned some of the information was fabricated. Tye then entered a conditional guilty plea, reserving the right to appeal the Municipal Court's order denying her motion to suppress. Tye appealed the Municipal Court's order to District Court, which affirmed the Municipal Court's decision. Tye now appeals the District Court's opinion and order affirming the Municipal Court's order denying her motion to suppress.

**STANDARDS OF REVIEW**

¶8 "When reviewing the decision of a municipal court, a district court functions as an intermediate appellate court." *City of Missoula v. Armitage*, 2014 MT 274, ¶ 11,

4

376 Mont. 448, 335 P.3d 736. We examine the record independently of the district court's decision, applying the appropriate standards of review. *Armitage*, ¶ 11. "We review the grant or denial of a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether the court correctly interpreted and applied the law to those facts." *State v. Wagner*, 2013 MT 159, ¶ 9, 370 Mont. 381, 303 P.3d 285. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the lower court misapprehended the effect of the evidence, or if our review of the record leaves us with a firm and definite conviction that the lower court made a mistake. *Wagner*, ¶ 9. Whether particularized suspicion exists is a question of fact. *Wagner*, ¶ 9.

## DISCUSSION

¶9 *Whether the District Court erred in affirming the Municipal Court's order denying Tye's motion to suppress.*

¶10 The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protect individuals from unreasonable seizures. Therefore, an investigatory stop must be justified by "particularized suspicion." Section 46-5-401(1), MCA. A law enforcement officer has particularized suspicion to justify a stop if he or she possesses: "(1) objective data from which the officer can make certain reasonable inferences and (2) a resulting suspicion that the person to be stopped has committed, is committing, or is about to commit an offense." *State v. Roy*, 2013 MT 51, ¶ 16, 369 Mont. 173, 296 P.3d 1169. In evaluating whether particularized suspicion exists, we consider the totality of the circumstances, including the quantity and quality of

5

the information available to the officer at the time of the stop. *City of Missoula v. Moore*, 2011 MT 61, ¶ 16, 360 Mont. 22, 251 P.3d 679; *State v. Flynn*, 2011 MT 48, ¶ 11, 359 Mont. 376, 251 P.3d 143.

¶11 "When an officer's particularized suspicion is based on a citizen informant's report, the report must contain some indicia of reliability." *Moore*, ¶ 17. In *State v. Pratt*, 286 Mont. 156, 951 P.2d 37 (1997), we adopted a three-factor test for assessing whether an informant's report of a suspected DUI is reliable. We consider: (1) whether the informant identifies himself to law enforcement and thus exposes himself to criminal and civil liability if the report is false; (2) whether the report is based on the informant's personal observations; and (3) whether the officer's own observations corroborated the informant's information. *Pratt*, 286 Mont. at 165, 951 P.2d at 42-43.

¶12 Tye contends that Officer Jones did not have reasonable suspicion to stop her under the *Pratt* test because: (1) Haddad did not willingly expose himself to criminal liability; (2) objective data indicated that Haddad's tip was not based on his personal observations; and (3) Officers Jones and Horton did not observe Tye driving erratically and did not observe a vehicle following her. Under the first Pratt factor, "a tip may be considered more reliable if the informant provides his or her name to law enforcement authorities." *Pratt*, 286 Mont. at 165, 951 P.2d at 42. Although Haddad did not provide his address to the 911 dispatcher or unequivocally agree to sign a complaint, he identified himself by providing his name and phone number. This information was sufficient for Officer Jones to contact him shortly after Tye's arrest.

6

¶13 Tye also contends that Haddad did not "identif[y] himself to law enforcement," *Pratt*, 286 Mont. at 165, 951 P.2d at 42, because 911 dispatchers are not law enforcement. This contention is without merit. We consistently have held that an informant exposes himself to criminal and civil liability when he identifies himself to a 911 dispatcher. *E.g.*, *State v. Hall*, 2004 MT 106, ¶ 15, 321 Mont. 78, 88 P.3d 1273; *Pratt*, 286 Mont. at 165, 951 P.2d at 43. Haddad exposed himself to potential criminal and civil liability when he identified himself to 911. *See* § 45-7-205(1)(a), MCA (providing criminal liability for false reports to law enforcement); *Pratt*, 286 Mont. at 165, 951 P.2d at 42. The District Court correctly applied the law and did not err in determining that Officer Jones' investigative stop met the first *Pratt* factor.

¶14 Under the second *Pratt* factor, an officer may infer that a report is based on a citizen informant's personal observations "if the report contains sufficient detail that 'it is apparent that the informant ha[s] not been fabricating [the] report . . . [and] the report [is] of the sort which in common experience may be recognized as having been obtained in a reliable way . . . .'" *Moore*, ¶ 21 (quoting *Pratt*, 286 Mont. at 165, 951 P.2d at 42-43) (changes in original). "[W]hen a tip has been relayed from dispatch and an officer has acted on that information, it is appropriate to look beyond the stopping or investigating officer to include the information known to the dispatching or reporting officer." *Hall*, ¶ 15. However, officers are not required to personally assess the reliability of a citizen informant's information, *Pratt*, 286 Mont. at 167, 951 P.2d at 44, and "need not consider every possible innocent explanation or legal exception before concluding that particularized suspicion exists," *Flynn*, ¶ 11.

7

¶15     For example, in *Navarette v. California*, __ U.S. __, __, 134 S. Ct. 1683, 1687-88 (2014), the U.S. Supreme Court held that information from an anonymous 911 caller—who reported that a truck ran her off the road and gave a detailed physical description of the vehicle—was sufficiently reliable to establish particularized suspicion for an investigative stop.   The Court found that the following factors weighed in favor of finding the caller's information reliable: (1) "the caller necessarily claimed eyewitness knowledge of the alleged dangerous driving" by providing specific information regarding the vehicle and the driver's actions; (2) the caller's report was substantially contemporaneous with her alleged observation of criminal activity; and (3) the caller used the 911 system, which "has some features that allow for identifying and tracing callers, and thus provide some safeguards against making false reports with immunity." *Navarette*, __ U.S. at __, 134 S. Ct. at 1689.   These factors conform with *Pratt* and its progeny in that they indicate that an informant's report is based on personal observations. *See Moore*, ¶ 21; *Pratt*, 286 Mont. at 165, 951 P.2d at 42-43.

¶16     When Officer Jones initiated the stop, the following objective information was available to both him and the 911 dispatcher:  an identified citizen informant called 911 to report that he was driving behind a drunk driver and provided a detailed description of the vehicle, including the direction in which it was travelling and that the driver was female.  The detailed information Haddad provided, the contemporaneity of his report with the event he allegedly was observing, and his use of the 911 system all weigh in favor of finding his information reliable.  Accordingly, Officer Jones reasonably inferred that Haddad's report was based on Haddad's personal observations. *See Moore*, ¶ 21; *see*

8

*also Navarette*, __ U.S. at __, 134 S. Ct. at 1689 ("[An informant's] explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case.") (citing *Illinois v. Gates*, 462 U.S. 213, 234, 103 S. Ct. 2317, 2330 (1983)) (changes in original). The District Court correctly applied the law and did not err in finding that Haddad's report met the second *Pratt* factor.

¶17  Tye contends that, based on language in *Navarette* describing public policy considerations for providing cellphone GPS data to 911 dispatchers, the dispatcher had a duty to test the reliability of Haddad's report by plotting the coordinates of Haddad's cell phone's location. We disagree. *Navarette* did not require 911 dispatchers to verify the location of the caller before passing the information along to law enforcement officers even though, as Tye points out, cell phone service providers have been required to instantaneously provide GPS data to identify a 911 caller's geographic location since at least 2001. *See* 47 C.F.R. 20.18(e)-(h). Lounsbury explained that 911 dispatchers generally do not plot the GPS coordinates because they lack precision. Moreover, when Officer Jones stopped Tye, there was no indication that Haddad was fabricating the information in his report. Given his detailed description of Tye's vehicle, Haddad's statements that he was unable to see the license plate or identify Tye's specific physical features do not weigh against this conclusion. Therefore, the District Court did not err in determining that the 911 dispatcher was not required to verify Haddad's location using the GPS coordinates of his cell phone's location before Officer Jones acted on the information Haddad provided.

¶18 Under the third *Pratt* factor, "An officer corroborates an informant's report by observing illegal activity or by finding 'the person, the vehicle, and the vehicle's location substantially as described by the informant.'" *Moore*, ¶ 25 (quoting *Pratt*, 286 Mont. at 165, 951 P.2d at 43) (emphasis omitted). If the report meets the first two Pratt factors, an officer may corroborate it "by observing wholly innocent behavior." *Moore*, ¶ 25. For example, we have held that an officer sufficiently corroborated an informant's report when the officer visually confirmed such innocent information as the vehicle's make, model, color, obstructed license plate, location, and the direction in which it was heading. *State v. Rutherford*, 2009 MT 154, ¶ 18, 350 Mont. 403, 208 P.3d 389.

¶19 Officer Jones observed a vehicle matching the detailed description given by Haddad, travelling in the direction Haddad said it would be driving, in the approximate location Haddad provided, with a female driver. Given that Haddad's report met the first two *Pratt* factors, this information—although innocent—was sufficient to corroborate it. That Officers Jones and Horton did not see a vehicle following Tye does not weigh against this finding; there are a number of reasonable explanations for this discrepancy, including that Haddad could have turned off of Hillview Way before the officers arrived on scene. The District Court correctly applied the law and did not err in finding that Haddad's report met the third *Pratt* factor.

**CONCLUSION**

¶20     We affirm the District Court's opinion and order affirming the Municipal Court's denial of Tye's motion to suppress.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT