FILED

03/14/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0590

DA 15-0590

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 55

CITY OF HELENA,

      Plaintiff and Appellee,

  v.

RICK DENNIS STROBEL,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                  In and For the County of Lewis and Clark, Cause No. DDC 14-413
                  Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Chad Wright, Chief Appellate Defender, James Reavis, Assistant
            Appellate Defender, Helena, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
            Attorney General, Helena, Montana

            Thomas Jodoin, Helena City Attorney, Todd Baker, Deputy City
            Attorney, Helena, Montana

Submitted on Briefs:  December 21, 2016

Decided:  March 14, 2017

Filed:

_____
                         Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Rick Dennis Strobel was charged with partner or family member assault (PFMA) after attacking his wife, Bridget Rogers. Rogers told the police that Strobel hit her in the face and tried to force her into a pickup truck. At trial, Rogers recanted her prior statement to the police. The Municipal Court nonetheless convicted Strobel of PFMA, and the District Court affirmed. Positing that the only evidence establishing the required element of "bodily injury" was Rogers's prior inconsistent statement, Strobel argues that the evidence was insufficient to support his conviction.

¶2 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Helena Police Officer Jonathan Cook responded to a bystander's 9-1-1 call reporting that a man—later identified as Strobel—was trying to force a woman into a pickup truck. Upon arrival at the scene, Officer Cook spoke with Rogers. He observed that Rogers was visibly upset, that she was crying, and that she smelled strongly of alcohol. Officer Cook testified that Rogers told him that Strobel tried to push her into the truck, that he grabbed her by the face, and that he punched her twice in the face. Officer Cook did not observe any injuries on Rogers, and she refused medical attention.

¶4 The City of Helena charged Strobel with PFMA under § 45-5-206(1)(a), MCA. Thomas Baty, the bystander who called 9-1-1, testified that he saw Strobel trying to push Rogers into the passenger side of the truck and that this "looked wrong" to him. He

2

stated that Rogers resisted Strobel's efforts to push her into the truck. Baty did not see Strobel punch Rogers or hear Rogers scream or cry for help.

¶5    When Rogers took the witness stand at trial, she testified that she was drunk at the time of the alleged assault and could only vaguely remember what happened. She claimed to not recall what she told Officer Cook, and she asserted that Strobel did not strike her in the face.

¶6    Strobel moved to dismiss the charges for insufficient evidence. The Municipal Court denied the motion and convicted him. Strobel then appealed his conviction to the First Judicial District Court. He argued that because Rogers recanted her statement and there was no other testimony that Strobel had struck her or otherwise caused her bodily injury, the evidence was not sufficient to support every element of the crime of PFMA under § 45-5-206(1)(a), MCA.

¶7    The District Court affirmed Strobel's conviction. The court reasoned that Officer Cook's and Baty's testimony supported the Municipal Court's conclusion that Strobel had caused Rogers bodily injury. Thus, the District Court held that sufficient evidence existed to support a finding that Strobel was guilty of PFMA. Strobel appeals.

**STANDARDS OF REVIEW**

¶8    When reviewing a district court's ruling on the decision of a municipal court, we examine the record independently of the district court's decision, applying the appropriate standards of review. *City of Missoula v. Tye*, 2016 MT 153, ¶ 8, 384 Mont. 24, 372 P.3d 1286. We review questions on the sufficiency of the evidence in a criminal

3

matter to determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Spottedbear*, 2016 MT 243, ¶ 8, 385 Mont. 68, 380 P.3d 810. Whether sufficient evidence exists to convict a defendant is ultimately an application of the law to the facts and, as such, is properly reviewed de novo. *State v. Colburn*, 2016 MT 246, ¶ 7, 385 Mont. 100, 386 P.3d 561. It remains the function of the trier of fact to determine the credibility of the witnesses and the weight to be given their testimony. *State v. Hudson*, 2005 MT 142, ¶ 22, 327 Mont. 286, 114 P.3d 210.

## DISCUSSION

¶9 *Whether sufficient evidence existed to support Strobel's conviction.*

¶10 The provision under which Strobel was charged, § 45-5-206(1)(a), MCA, requires proof that the defendant "purposely or knowingly cause[d] bodily injury to a partner or family member." "Partner" includes spouses. Section 45-5-206(2)(b), MCA. "Bodily injury" means "physical pain, illness, or an impairment of physical condition." Section 45-2-101(5), MCA. Strobel contends that the only evidence establishing the necessary element of bodily injury is Rogers's prior inconsistent statement to Officer Cook. Without corroboration of her statement, he asserts that the evidence was insufficient to sustain his conviction.

¶11 Each element of a criminal offense "must be proven by sufficient evidence." *Spottedbear*, ¶ 23. Prior inconsistent statements may be admitted as substantive evidence and may be considered in "determining whether the evidence is sufficient to sustain the

4

conviction." *State v. Torres*, 2013 MT 101, ¶ 27, 369 Mont. 516, 299 P.3d 804. A prior inconsistent statement is a statement made by a declarant that the declarant later contradicts during testimony at trial. M. R. Evid. 801(d)(1)(A). While such a statement may be admitted as substantive evidence, it is insufficient, standing alone, to prove a necessary element of a criminal offense. *Torres*, ¶ 27 (citing *State v. White Water*, 194 Mont. 85, 88-89, 634 P.2d 636, 638 (1981)). Instead, prior inconsistent statements must be corroborated by other evidence in order to sustain a conviction. *State v. Giant*, 2001 MT 245, ¶ 34, 307 Mont. 74, 37 P.3d 49; *State v. Charlo*, 226 Mont. 213, 217, 735 P.2d 278, 280 (1987).

¶12 We established in *White Water* that "[a]n unreliable prior inconsistent statement should not be the sole, substantive evidence upon which a jury should be allowed to base guilt." *White Water*, 194 Mont. at 88, 634 P.2d at 638. We relied on *White Water* to conclude in *Giant* that prior inconsistent statements admitted as substantive evidence of guilt must be corroborated in order to sustain a conviction. *Giant*, ¶ 34. We held that evidence of the husband's flight did not corroborate the wife's prior inconsistent statement identifying him as her attacker, because neither the prior statement nor the evidence of flight independently constituted reliable evidence of guilt. *Giant*, ¶¶ 39, 41. We noted that evidence of flight, standing alone, "cannot be the sole basis of guilt," as flight could be "as consistent with innocence as it is with guilt." *Giant*, ¶ 38. We explained that to hold that "two forms of evidence, each unreliable in its own right, nonetheless, when taken together, are sufficient to prove guilt beyond a reasonable doubt,

5

accords the sum of the evidence a characteristic trustworthiness that neither of its constituent parts possesses." *Giant*, ¶ 39.

¶13 By contrast, we held in *Charlo* that prior inconsistent statements identifying the defendant as the suspect in an aggravated assault case were adequately corroborated. *Charlo*, 226 Mont. at 217-18, 735 P.2d at 280-81. In that case, Charlo allegedly stabbed his daughter's boyfriend in a parking lot. *Charlo*, 226 Mont. at 214, 735 P.2d at 279. The daughter and boyfriend both made statements to the police identifying Charlo as the assailant. *Charlo*, 226 Mont. at 214, 735 P.2d at 279. At trial, they recanted their statements and asserted that they did not know who had stabbed the boyfriend. *Charlo*, 226 Mont. at 215, 735 P.2d at 279. The daughter, boyfriend, and a third-party witness did, however, provide testimony that placed Charlo near the victim immediately prior to the stabbing, and the daughter testified that Charlo had a knife in his hand immediately after the stabbing. *Charlo*, 226 Mont. at 217, 735 P.2d at 280-81. We held that this testimony was sufficient corroboration of the prior inconsistent statements. *Charlo*, 226 Mont. at 218, 735 P.2d at 281.

¶14 We also found sufficient corroboration of prior inconsistent statements regarding the defendant's use of force in *Torres*. *Torres*, ¶ 30. In that case, police officers responding to a domestic violence call heard gunshots from Torres's bedroom, and they saw Torres's wife, Grendy, quickly exit the house crying, shaking, and appearing "frantic." *Torres*, ¶¶ 8-10. Grendy told police that Torres had violently assaulted her, that he had threatened to kill her, and that she was afraid for her life. *Torres*, ¶¶ 11, 13,

6

22. Torres admitted to police that he had physically restrained Grendy and had fired a gun in her presence. *Torres*, ¶ 12. At trial, Grendy contradicted her statements made to the police. *Torres*, ¶ 14. We upheld Torres's conviction, reasoning that "the evidence *as a whole*" was sufficient for a reasonable jury to find that Torres used force against Grendy. *Torres*, ¶¶ 28, 30.

¶15 Strobel argues that because there is no other evidence that he punched Rogers or caused physical injury, her prior statement cannot support his conviction. Significantly, in both *Torres* and *Charlo*, there was no other direct evidence of the seminal act that formed the basis for the charge. In *Torres*, there was no direct evidence besides the prior inconsistent statements that Torres threatened to kill Grendy or that he hit her or pushed her head into the windshield. *See Torres*, ¶¶ 6-14, 21-23. But we determined that each piece of corroborating evidence—that Torres grabbed Grendy firmly by the arm, that he fired a shot from the bedroom where he held her, that Grendy's demeanor indicated she was upset and afraid for her safety, and that Grendy spent the night in a hotel rather than returning home—"bears on an element of aggravated assault and corroborates Grendy's prior inconsistent statements." *Torres*, ¶ 28. In *Charlo*, the corroborating evidence was sufficient because it placed the defendant near the victim with a knife at the time of the stabbing, even though there was no independent direct evidence that Charlo did the stabbing. *Charlo*, 226 Mont. at 217-18, 735 P.2d at 280-81.

¶16 We stated in *Torres* that "[a]s long as each element of the offense finds support in some independent, reliable evidence of guilt besides the prior statement . . . corroboration

7

will be sufficient." *Torres*, ¶ 27. The elements of an offense "do not require direct evidence and can be established by circumstantial evidence alone." *State v. Finley*, 2011 MT 89, ¶ 29, 360 Mont. 173, 252 P.3d 199 (citing *State v. Vukasin*, 2003 MT 230, ¶ 20, 317 Mont. 204, 75 P.3d 1284). Circumstantial evidence is evidence "which tends to establish a fact by proving another and which, though true, does not of itself conclusively establish that fact but affords an inference or presumption of its existence." Section 26-1-102(1), MCA.

¶17 In *Finley*, we reinstated the defendant's PFMA conviction because, although his wife recanted at trial her statements that he had assaulted her, there was ample circumstantial evidence that "allowed a rational trier of fact to conclude that the 'reasonable apprehension of bodily injury' element was satisfied beyond a reasonable doubt." *Finley*, ¶ 30. And in *Vukasin*, we sustained the defendant's PFMA conviction without the victim's direct testimony that she feared injury, reasoning that "the direct proof of other facts may give rise to an inference that the victim sustained reasonable apprehension of bodily injury." *Vukasin*, ¶¶ 20-22.

¶18 These cases make clear that corroborating evidence must be *reliable*, but it need not be *direct* evidence of each element of the offense. If circumstantial evidence alone is sufficient to support a conviction, *Finley*, ¶ 29, it certainly is sufficient to supply corroboration of a prior inconsistent statement. Here, as in *Torres*, *Charlo*, and *Finley*, there is substantial, reliable circumstantial evidence bearing on the elements of the charged offense to corroborate Rogers's prior statements: Rogers was crying and visibly

8

upset, and Baty witnessed Strobel attempt to physically force Rogers into the truck. The State did not have to prove, as an element of the offense, that Strobel grabbed Rogers by the face or punched her. Even without independent, direct evidence of those actions, the reliable circumstantial evidence—viewed in a light most favorable to the prosecution—corroborates Rogers's prior statement that Strobel assaulted her and caused physical pain. The corroborating testimony does not have to be sufficient, standing alone, to prove guilt. It instead must "support" the elements of the offense established by the substantive evidence that the prior inconsistent statement supplies. *Torres*, ¶ 27. Evidence of Strobel forcing Rogers into the truck and of Rogers's demeanor after the encounter supported an inference that Strobel caused her bodily injury, just as evidence placing Charlo near the stabbing victim with a knife in his hand supported an inference that he had committed the stabbing. *See Charlo*, 226 Mont. at 217-18, 735 P.2d at 280-81. Rogers's prior statement supplied substantive evidence of the elements of the charged offense. *See Torres*, ¶ 27. With corroboration from other reliable, circumstantial evidence, that evidence is sufficient to sustain Strobel's conviction.

¶19 We acknowledge the shortcomings in the *White Water* Court's analysis on this point. White Water's ex-wife had witnessed him putting his hand down the back of her 15-year-old daughter's underwear. *White Water*, 194 Mont. at 86, 634 P.2d at 637. The daughter repudiated at trial her statement to police that White Water had penetrated her vagina with his finger. *White Water*, 194 Mont. at 87, 634 P.2d at 637. We agreed with the trial court's decision to dismiss the charge. *White Water*, 194 Mont. at 87, 634 P.2d

9

at 637. Our decision focused on the unreliability of the victim's prior statement. *White Water*, 194 Mont. at 87-88, 634 P.2d at 637-38. Although we noted that the ex-wife "had no knowledge of whether penetration"—a necessary element of sexual intercourse without consent—"had indeed occurred," we did not discuss or analyze in any fashion whether circumstantial evidence, if reliable, could supply the corroboration needed for a prior inconsistent statement. *White Water*, 194 Mont. at 88, 634 P.2d at 638. Our subsequent cases make clear, however, that it can.

CONCLUSION

¶20 We hold that the element of "bodily injury" required for a conviction under § 45-5-206(1)(a), MCA, was supported by "independent, reliable evidence of guilt besides the prior statement," and therefore that the corroboration was sufficient. *Torres*, ¶ 27. Viewing the evidence in the light most favorable to the prosecution, we conclude that the Municipal Court reasonably could have found every element of the crime of PFMA beyond a reasonable doubt. *See Spottedbear*, ¶ 8. The District Court did not err in affirming Strobel's conviction.

¶21 The judgment is affirmed.


/S/ BETH BAKER

We concur:

/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

10

Justice Laurie McKinnon, dissenting.

¶22 Based on well-reasoned precedent of this Court, an uncorroborated prior inconsistent statement may not be the sole source of support for the central allegation of a criminal charge; in this case, bodily injury. Each element of a criminal charge must be supported with a factual basis upon which a conclusion of guilt beyond a reasonable doubt may be reached. Here, the Court incorrectly concludes Rogers' statement to law enforcement that Strobel struck her in the face is corroborated by Baty's observations that Strobel pushed Rogers into the truck. In my opinion, it is quite a reach to conclude that being pushed corroborates Rogers' statement that she was struck in the face, which is the essential fact necessary to establish bodily injury in this case. The substance of the prior inconsistent statement, utilized here by the State to substantiate an element of the offense, must be corroborated. Bruising, red marks, observations of bodily injury by witnesses, or other evidence that Rogers was struck in the face would have been sufficient. The Court's conclusion that being pushed corroborates Rogers' prior inconsistent statement of being struck in the face stands in stark contrast to well-reasoned precedent of this Court requiring that the prior inconsistent statement be corroborated by independent, reliable evidence.

¶23 We have consistently held that "a criminal conviction cannot be sustained where the only evidence of some essential element of the crime is a prior inconsistent statement." *Giant*, ¶ 12; *White Water*, 194 Mont. at 89, 634 P.2d at 639; *State v. Gommenginger*, 242 Mont. 265, 278, 790 P.2d 455, 463 (1990). The City charged

11

Strobel with the offense of partner or family member assault, pursuant to § 45-5-206(1)(a), MCA. A prosecution pursuant to this section requires the City to establish that Strobel "purposely or knowingly cause[d] bodily injury to a partner or family member." Significantly, Strobel was not charged with "purposely or knowingly caus[ing] *reasonable apprehension* of bodily injury . . . ," § 45-5-206(1)(c), MCA. (Emphasis added.) Thus, the City had to prove beyond a reasonable doubt that: (1) Strobel caused *bodily injury* to Rogers; and (2) Strobel acted with purpose or knowledge. Bodily injury is defined as "physical pain, illness, or an impairment of physical condition . . . ." Section 45-2-101(5), MCA. Here, the evidence relevant to the statutory definition of bodily injury was that Strobel caused Rogers "physical pain" when he struck her in the face. Rogers testified at trial, however, that Strobel did not try to strike her in the face. Thus, Rogers' prior inconsistent statement regarding an essential element of the crime had to be corroborated with independent, reliable evidence.

¶24    In *White Water*, we held that a prior inconsistent statement admitted as substantive evidence pursuant to Rule 801(d)(1)(A), M. R. Evid., although admissible, was insufficient by itself to support a conviction without corroboration by independent evidence. *White Water*, 194 Mont. at 88-89, 634 P.2d at 638-39. White Water was charged with sexual intercourse without consent based upon the State's allegations that he penetrated the victim's vagina with his finger. The only evidence supporting an essential element of the offense—penetration—was the victim's prior inconsistent statement. The victim had told law enforcement White Water placed his hand down the

12

back of her pants and penetrated her vagina with his finger. At trial, however, the victim testified that White Water had only touched her "butt" next to her skin and then removed his hand when her mother came into the room. The victim's mother testified that she had no knowledge of whether penetration occurred and that all she saw when she came into the room was White Water removing his hand from the victim's underwear. Observing that perhaps the evidence would have supported a charge of sexual assault, we affirmed the dismissal of the charge because "[w]ithout [the victim's testimony], there is no evidence of one essential element of the offense of sexual intercourse without consent: penetration." *White Water*, 194 Mont. at 88, 634 P.2d at 638.

¶25    Similarly, in *Giant* we observed that an essential element of the offense was the identity of the victim's assailant. Giant was charged with aggravated assault after the victim reported to law enforcement that Giant attacked her from behind by wrapping duct tape around her neck, threatening her with a gun, and dragging her by the hair to a bedroom. She was placed on or near a large piece of black plastic and wrapped with more duct tape where she was beaten, choked, and stabbed in the arm with an ice pick. A search of the house produced pieces of duct tape, a broken steak knife, blood stained clothing and bedding, a large piece of black plastic, and a gun and ammunition. Giant fled and was at large for four months, having withdrawn all available cash from the couple's savings account. At trial, the victim identified her assailant as her son, and not Giant. We observed that the victim's prior inconsistent statements and Giant's flight made up the only evidence against Giant "on the essential element of the identity of the

13

assailant." *Giant*, ¶ 15. Although finding that the evidence clearly established that an assault had occurred, there was no corroboration of the victim's prior inconsistent statement that Giant was her assailant. We declined the State's invitation to conclude there was corroboration through evidence that the victim had stopped cooperating with the County Attorney when Giant was released on bail and that she had asked the criminal charges against Giant be dismissed after her divorce proceedings were dismissed. We found "none of this evidence independently corroborates the statements" and that the victim's "prior statements alone are insufficient as a matter of law to support Giant's convictions." *Giant*, ¶ 37.

¶26     Several cases are noteworthy for having found sufficient corroboration of a prior inconsistent statement substantiating an essential element of the crime, which are easily distinguished from the facts present here. In *Charlo*, Steele was stabbed in the abdomen with a knife as he and Albert Charlo were attempting to jumpstart a car outside a laundromat. The car belonged to Beth Charlo, who was the defendant's daughter and Steele's girlfriend. Beth told law enforcement that she saw Steele fall, then get up and say to her, "He just stabbed me." Steele told police that he saw Charlo take a knife out of his back pocket and stated "I knew Albert stabbed me." At trial, both Steele and Beth testified that they did not know who stabbed Steele. We held there was sufficient corroboration of the prior statements made by Steele and Beth because the laundromat owner testified that Charlo, Beth, and Steele were the only people in the parking lot at the time of the stabbing and Beth, when testifying, stated that she saw Charlo and Steele

14

standing together in front of the car, saw Steele fall down, and saw Charlo with a knife in his hand. Noting that the identity of Steele's assailant was the essential element of the crime in dispute, we held that "the corroborating testimony of three witnesses places Charlo near Steele immediately prior to the stabbing and confirms that Steele was stabbed" and "the corroborating testimony of one witness places a knife in Charlo's hand." *Charlo*, 226 Mont. at 217, 735 P.2d at 281. Accordingly, the prior statement of Steele and Beth that Charlo was Steele's assailant was corroborated with independent, although circumstantial, evidence of identity.

¶27 In *Torres*, upon which the Court relies heavily, there was similarly independent evidence corroborating the victim's prior inconsistent statement of an essential element of the crime of aggravated assault. Torres and his wife, Grendy Torres, got into an argument when Torres learned Grendy was sending money to her family in Costa Rica. Grendy left for the home of her co-worker, Marina Sunell. Torres broke down Marina's door and removed Grendy. Marina called 9-1-1 and told law enforcement that Torres had grabbed Grendy "like a piece of rag" and dragged her from the house. Once Torres and Grendy arrived home, Torres retrieved a Glock .45 from his truck and followed Grendy upstairs. As officers approached the residence they heard a muffled gunshot and learned that Torres had opened a sliding glass door and fired a shot at the ground. Torres fired a second shot that shattered the sliding glass door and passed above the officers' heads. Shortly thereafter, Grendy came out of the residence. Officers testified that Grendy was frantic, crying, shaking, and left the residence at a fast pace or jog. Torres remained

15

inside the house and fired a third shot into the bedroom floor, and then surrendered himself to police. Grendy told law enforcement that she was afraid that night and thought she was going to die. She also made statements to law enforcement that she was taken from Marina's house against her will; that Torres had pushed her head into the windshield when they were driving, which caused a small crack; and that a larger crack was caused when Torres hit the windshield himself out of anger. At trial, however, Grendy testified that she had lied to police, that she willingly departed Marina's house, and that "she slipped from pulling and hit her head" on the windshield as a result of Grendy hitting Torres.

¶28 Torres, who was charged with aggravated assault, argued that there was insufficient evidence that he used force or caused Grendy reasonable apprehension of serious bodily injury or death. We explained in *Torres* that the necessary corroboration may not "be supplied only by other evidence that is not sufficient to prove guilt." *Torres*, ¶ 27. After reviewing the evidence, we found independent corroboration of the essential element of the offense—reasonable apprehension of serious bodily injury or death— through Torres' own statements admitting that Grendy did not want to leave Marina's house and that he held her in the bedroom with a firearm in his hand. We found corroboration of reasonable apprehension of bodily injury in the undisputed evidence that Torres intentionally fired shots from the bedroom; that his admissions established he shot the first bullet to make Grendy realize the "seriousness" of the situation "she had caused"; and that officers observed Grendy's fear and apprehension when she left the

16

house and stayed in a hotel room that night rather than returning home. We held that "[a]s long as each element of the offense finds support in some independent, reliable evidence *of guilt* besides the prior statement, however, corroboration will be sufficient." *Torres*, ¶ 27 (emphasis added).

¶29 In my opinion this Court's statement in *Torres* that there must be "independent, reliable evidence of guilt besides the prior statement," *Torres*, ¶ 27, mischaracterized the rule. The independent reliable evidence must not corroborate guilt, but must corroborate the substance of the prior inconsistent statement which is being used to establish an element of the crime. Nonetheless, the Court perhaps today recognizes it misstated a fundamental rule when the Court explains, in contrast to *Torres*, the "corroborating testimony does not have to be sufficient, standing alone, to prove guilt." Opinion, ¶ 18. The rule is that a prior inconsistent statement, the substance of which has been corroborated, may stand as independent, reliable evidence of guilt and is sufficient to support an essential element of the crime. *White Water*, 194 Mont. at 89; *Giant*, ¶ 12. Unfortunately the Court, once again, departs from clear precedent by concluding that the corroborating testimony simply has to "'support' the *elements* of the offense . . . ," Opinion, ¶ 18 (emphasis added); that is, presumably *any* element or even the fact that some incident took place at all. In other words, a prior inconsistent statement concerning an essential element of the offense is now sufficient to sustain a conviction even though the corroborating evidence supported a different and, perhaps, undisputed element of the crime—for example, identity or reasonable apprehension of fear. The Court's analogy

17

between Strobel pushing Rogers into the truck as supporting her prior inconsistent statement of being struck in the face stands in stark contrast to evidence that Charlo was observed holding a knife where the identity of the *stabber* was in dispute. Opinion, ¶ 18. Further, in addition to rewriting *Torres*, the Court also attempts to rewrite *White Water*. Opinion, ¶ 19. Respectfully, any "shortcomings" are with the Court's analysis today, and not with "the *White Water* Court's analysis on this point."[1] The substance of the corroborating evidence in *Torres* and *Charlo* is easily distinguished from the case presented here. It is undisputed that the State was using Rogers' prior inconsistent statement as support for the element of bodily injury. Being pushed into the truck neither corroborates being struck in the face nor is it "independent, reliable evidence of guilt . . . ." *Torres*, ¶ 27.

¶30 The Court also relies upon *Finley* and *Vukasin* as examples of independent evidence which corroborates a prior inconsistent statement used to establish an essential element of the crime. In *Finley*, however, the defendant was charged with partner or family member assault pursuant to § 45-5-206(1)(c), MCA, requiring that the defendant cause "reasonable apprehension" of bodily injury. Debbie Finley called 9-1-1 after she fled her residence without shoes and in her sleepwear. She told the dispatcher that Finley

---

[1] Astonishingly, this Court appears to suggest, over thirty years later, that there may have been circumstantial evidence in *White Water* supporting the element of penetration which was not considered or analyzed by this Court. Opinion, ¶ 19. Undoubtedly, corroboration of all the elements in a prosecution of sexual intercourse without consent are difficult when the victim recants, since frequently these offenses are committed out of the presence of other witnesses; hence, the nemesis of the prosecutor where the victim does not want to "press" charges. However, this Court should not depart from the clear guidance it has previously established concerning evidentiary rules and sufficiency determinations in order to assist the State in difficult prosecutions involving a recanting victim. *Giant*, ¶¶ 27, 34.

18

was trying to hurt her and said he was going to crush her head in. She said she was frightened because her son and mother remained in the home and Finley was inside drunk, trashing the place. When the victim testified at trial that she lied to law enforcement and fabricated the story so the police would remove Finley from her house, we held that "a rational trier of fact [could] conclude that the 'reasonable apprehension of bodily injury' element was satisfied beyond a reasonable doubt." *Finley*, ¶ 30. We described the corroborating evidence of reasonable apprehension as follows:

> The 911 recording was introduced as evidence in the Justice Court trial. It captured more than just words. It clearly demonstrated Debbie's outright fear that Finley was going to harm her. She told the dispatcher that Finley had threatened to crush her head. Furthermore, she was scared enough to flee her home, into a cold night with fresh snow on the ground, wearing only pajamas and socks. Not only did Debbie repeatedly express concern that Finley had followed her, but her fear was great enough that the dispatcher had to coax her out of hiding, once inside of the Town Pump. Additionally, the Justice Court heard from three police officers who testified to Debbie's distraught appearance. She told Reighard that if she had not left her house, she would probably be dead. Furthermore, Reighard confirmed the damage to the house and blood on the wall. These observations corroborated the story Debbie told on the 911 recording. Debbie's reluctance to remain in her house without police presence culminated in her decision to remove her entire family from the home that night. Finally, the Justice Court heard Debbie's trial testimony, which tended to conflict with almost all of the other evidence in the record.

*Finley*, ¶ 30. Undisputedly, Debbie's prior inconsistent statements that she feared being injured by Finley were corroborated by this independent evidence demonstrating she was in fear of Finley and of being hurt. However, aside from the qualitative characteristics of the evidence in *Finley*, the essential element of the offense in *Finley* was "reasonable apprehension" of bodily injury and is thus distinguishable from a charge premised upon

19

"knowingly or purposely causing bodily injury." Accordingly, any evidence upon which a rational trier of fact could conclude "reasonable apprehension of bodily injury" by the victim would be sufficient corroboration of an essential element of the offense pursuant to § 45-5-206(1)(c), MCA. We held that "the standard is objective, asking whether a reasonable person under similar circumstances would have reasonably apprehended bodily injury." *Finley*, ¶ 29.

¶31 The Court is also misguided in its reliance on *Vukasin*, which did not involve a prior inconsistent statement. In *Vukasin*, we clearly distinguished subsection (1)(c) of § 45-5-406, MCA, when we held "[t]he State's charge of partner or family member assault did not allege that Vukasin had actually assaulted [the victim], but had caused her apprehension of injury in violation of § 45-5-206(1)(c), MCA." *Vukasin*, ¶ 17. We explained that "[t]he standard for determining whether a person has 'reasonably apprehended bodily injury is that of a reasonable person under similar circumstances.'" *Vukasin*, ¶ 19, citing *State v. McCarthy*, 1999 MT 99, ¶ 27, 294 Mont. 270, 980 P.2d 629. We described the State's evidence as follows:

> The State presented evidence that Vukasin had been drinking that night and that his attitude and behavior changed when he did so. The evidence further established that Zigan asked Vukasin not to return to the apartment because of his drinking, but that Vukasin refused to honor that request and refused to turn over his apartment key to her. When Vukasin returned to their apartment, Zigan, concerned because of Vukasin's past behavior, removed herself and her dog from the apartment, and locked herself in the neighbor's bathroom when Vukasin came searching for her. Vukasin then went into a rage, threatening to "trash" Zigan's apartment if Zigan did not "get back" to the apartment, destroying property, yelling loudly and threatening to kill Zigan. Zigan placed not one, but three, calls to 911, and continued to take refuge in her neighbor's apartment until police arrived, even though

20

> Vukasin was destroying her property. As officers attempted to communicate with Vukasin, she opened the door to her neighbor's apartment, only to see an officer jumping back. She observed knife holes in her apartment door and was instructed to go back into her neighbor's apartment by the officers. She and the neighbor retreated out the back door of the apartment and, on police instruction, left the premises for the night.

*Vukasin*, ¶ 21. Based on the foregoing, we had little difficulty concluding that a rational trier of fact could have found the essential element of reasonable apprehension of bodily injury. *Vukasin*, ¶ 22.

¶32 Not only is *Vukasin* distinguishable because there were no prior inconsistent statements used by the state to establish an essential element of the crime, but *Vukasin* involves a different criminal offense under the partner or family member assault statute which incorporates a "reasonable person under similar circumstances" standard. The Court conflates different statues in determining what is necessary to establish beyond a reasonable doubt the essential element of the crime; here, it is bodily injury or "physical pain," §§ 45-2-101(5); 45-5-206(1)(a), MCA, not a "reasonable person under similar circumstances" standard.

¶33 Here, Rogers testified she did not remember the evening and that she was drunk. The only evidence of the essential element of bodily injury was Rogers' prior inconsistent statement that she had been struck in the face. It was necessary for the State to corroborate that Rogers suffered bodily injury or "physical pain" for there to be sufficient evidence of an essential element of the crime. Baty's testimony that he witnessed Strobel pushing Rogers into a vehicle does little to corroborate Rogers' prior

21

inconsistent statement to law enforcement that she was struck in the head and then grabbed by the face.

¶34    Based on the foregoing analysis and review of the evidence, I would reverse Strobel's conviction because an essential element of the crime charged—acting purposely or knowingly to cause bodily injury—was supported only by an uncorroborated prior inconsistent statement.  I dissent from the Court's decision concluding otherwise.


                                        /S/ LAURIE McKINNON